IN THE COURT OF APPEALS

FILED

January 6, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

WILLIAM T. RAWLS,                )    KNOX CIRCUIT
                                 )    C.A. NO. 03A01-9707-CV-00293
                                 )
          Plaintiff-Appellant    )
                                 )
                                 )
                                 )
                                 )
                                 )
vs.                              )    HON. WHEELER A. ROSENBALM
                                 )    JUDGE
                                 )
                                 )
                                 )
                                 )
                                 )
N.V. HODGE, NORFOLK SOUTHERN     )    AFFIRMED IN PART
RAILWAY COMPANY, DYCHO           )    REVERSED IN PART
COMPANY, INC., AND JAMES         )    REMANDED
MOYER MASSEY,                    )
                                 )
        Defendants-Appellants    )


ROBERT E. PRYOR, Pryor, Flynn, Priest & Harber, Knoxville, for
Appellant.


JOHN W. BAKER, JR., Baker, McReynolds, Byrne, O'Kane, Shea &
Townsend, Knoxville, for Appellees N.V. Hodge and Norfolk Southern
Railway Company.


HOWARD H. VOGEL & ANDREW CRAIG TROUTMAN, O'Neil, Parker & William-
son, Knoxville, for Appellee Dycho Company, Inc.

O P I N I O N

McMurray, J.

William T. Rawls (plaintiff) brought this action to recover damages resulting from a collision between a truck in which he was a passenger and a train owned by Norfolk Southern Railway Company. The truck was being driven by the defendant, James Massey. The train engineer was the defendant, N. V. Hodge. Rawls alleged that Norfolk Southern's locomotive was at the time of the collision being operated in a negligent manner under the circumstances existing at the crossing where the accident took place. He alleged that Hodge failed to give warning by blowing the train's whistle or horn, and that the crossing was not sufficiently marked by adequate warning devices. Rawls also sued Dycho Company, the owner of the land adjacent to the railway, alleging that a fence which Dycho had placed on its land, together with various structures and objects inside the fence, constituted a dangerous obstruction which blocked the view of the oncoming train.

Defendants, Norfolk Southern, Hodge, and Dycho moved for summary judgment. Summary judgment was granted by the trial court on the grounds that there was no negligence on the part of the movants which proximately caused Rawls' injury. A non-suit was taken as to the defendant, Massey. Additionally, the court made

the order final pursuant to Rule 54.02.  Therefore, the trial court's order is final and appealable.

The issue on this appeal is whether the trial court was correct in granting summary judgment to the moving defendants.  We affirm the trial court's judgment as to Dycho, but find there are genuine issues of material fact precluding summary judgment against the defendants, Norfolk Southern and N. V. Hodge.

The standards governing a review of a trial court's grant of summary judgment are well-settled:

> Tenn.R.Civ.P. 56.03 provides that summary judgment is only appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, <u>Byrd v. Hall</u>, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts.  <u>Anderson v. Standard Register Co.</u>, 857 S.W.2d 555, 559 (Tenn. 1993).  The moving party has the burden of proving that its motion satisfies these requirements.  <u>Downen v. Allstate Ins. Co.</u>, 811 S.W.2d 523, 524 (Tenn. 1991).

> The standards governing the assessment of evidence in the summary judgment context are also well estab-lished.  Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor.  <u>Byrd</u>, 847 S.W.2d at 210-11.  Courts should grant a summary judgment only when both the facts and the conclusions to be drawn from the facts permit a reason-able person to reach only one conclusion.  <u>Id.</u>

<u>Carvell v. Bottoms</u>, 900 S.W.2d 23, 26 (Tenn. 1995).

On October 10, 1992, at about 9:00 AM, Massey and Rawls were in the process of delivering some furniture for their employer.

3

They were proceeding generally south on Mederian Street in Niota when they were struck by the eastbound train. The crossing had a "crossbuck" sign indicating the presence of railroad tracks, but no other warning devices.

Dycho owns the land in the northwest quadrant adjacent to the railroad and to Mederian Street. Dycho had constructed, on its property, a chain link fence approximately nineteen feet from the center of the railroad tracks, running parallel to the railroad. Inside the fence were various structures and objects owned and maintained by Dycho.

We first address the propriety of summary judgment in favor of Dycho. The plaintiff contends that Dycho was negligent in erecting and maintaining the structures and objects on its land because they constituted a dangerous obstruction to the view of any oncoming eastbound train. Dycho responds that it is "a private land owner with no duty to maintain the public road, its property, the railroad right of way or the signage or signaling in connection therewith"; that it has the right to improve and utilize its property as it wishes, and that there is no duty on its part not to obstruct the view of the railway.

Plaintiff counters by arguing that T.C.A. § 39-17-307 establishes such a duty on the part of Dycho. T.C.A. § 39-17-307 provides in pertinent part as follows:

4

(a) A person commits an offense who, without legal privilege, intentionally, knowingly or recklessly:

(1) Obstructs a highway, street, sidewalk, railway, waterway, elevator, aisle, or hallway to which the public, or a substantial portion of the public, has access... .

*     *     *     *

(b) For purposes of this section, "obstruct" means to render passage impassable or to render passage unreasonably inconvenient or potentially injurious to persons or property.

T.C.A. § 39-17-307 is a criminal or penal statute. We are of the opinion that the statute has no application to the case at hand. It is a fundamental rule that penal statutes and ordinances are strictly construed. Kitts v. Kitts, 136 Tenn. 314, 189 S.W. 375 (1916). "A penal statute or ordinance will not be enlarged by implication or intendment beyond the fair meaning of the language used ... ." Richmond v. State, 171 Tenn. 1, 100 S.W.2d 1 (1937). City of Kingsport v. Jones, 268 S.W.2d 576 (Tenn. 1954). We do not believe that the use of one's property for lawful purposes without encroachment upon the right-of-way of a roadway constitutes an offense using the "fair meaning of the language test." It, therefore, follows that there was no violation of the statute under the circumstances of this case.

Considering all the undisputed evidence and all legitimate inferences that may be drawn therefrom, reasonable minds cannot

5

differ regarding the defendant Massey's failure to look to his right earlier than immediately before impact.  When Massey looked to his right, the truck was already on the tracks. Therefore, plaintiff's injury could not have been proximately caused by a breach of a duty on the part of Dycho even if a duty existed.

Mr. Massey testified by deposition as follows:

Q.   And those [crossings] that do not have, in your judgment, pretty good visibility, what would you do?  What was your habit and your custom?

A.   This is the first one I've ever come to that didn't have good visibility.

Q.   And as a result of it not having, in your mind, pretty good visibility, what precautions did you take as a result?

A.   Listening for a whistle.

Q.   Anything else?

A.   No, sir.

                    *      *      *      *

Q.   As you approached, did you look to your left?

A.   It seems like I looked to my left.  I didn't stop. I kept — continued going.  And just out of the corner of my right eye, I remember seeing a light and it seemed like I might have heard a whistle just prior to impact.  And then when I came to, the truck was sitting in a field.

                    *      *      *      *

Q.   And I take it that when you heard that whistle and saw that light out of the corner of your eye, your vehicle had already entered upon the tracks?

A.   Yes, sir.

6

                    *       *       *       *

Q.    Do you normally look for trains coming at the
      moment you're driving up and across the bumps, or
      are you watching the road at that point normally?

A.    Normally I'm watching the road.

Q.    Do you believe that based upon your past driving
      habits and experiences, that on the day of this
      wreck, October the 10th, 1992, that before you got
      to the railroad tracks, you looked for a train and
      listened for a train?  Do you believe you did that?

                    *       *       *       *

A.    I know I was listening, but as far as looking, I
      don't really think I paid close attention looking-
      wise.

                    *       *       *       *

Q.    Did I understand you to say that the first aware-
      ness you had of the train's presence was you got a
      glimpse of the light?

A.    Yes, sir.

                    *       *       *       *

Q.    Can we assume then you feel, reflecting back on it,
      that you were reasonably aware of what was going on
      as you drove down through there?

                    *       *       *       *

Q     Do you believe that you were being reasonably
      aware?

                    *       *       *       *

A.    As far as using my hearing, yes, sir.


     Two depositions of Mr. Massey are in the record.  In neither

does he state that he looked to his right before entering the

railroad crossing.

                              7

Q       From all you know about this wreck, having been involved in it <u>and going back to the scene</u>, do you believe there was an obstruction to your view between you and the train in that Dycho area there?

                    *       *       *       *

Q.      That blocked the view of the train?

A.      I personally believe there was some type of obstruction.

Q.      Yes.

A.      Or else I would have seen the light sooner.

                    *       *       *       *

Q.      And between you and the train, the way you were approaching the track with the train coming from your right, there's a yard there with a chain link fence around it.

A.      Uh-huh.

Q.      And you know <u>today and after this wreck</u> that there was stuff in that chain link fence, inside there; tanks and all kinds of machinery, mechanical stuff.

A.      Uh-huh, yes, sir.

Q.      And <u>after the wreck, in the days and weeks that followed, when you went out there and looked at it</u>, whenever it was, you found out that that did block your view or didn't block your view of the train and the train's view of you?

A.      It did.

(Emphasis added to the above testimony.)


The testimony clearly reflects that Mr. Massey did not become aware of the obstruction alleged to have been created by Dycho until after the accident occurred. The evidence taken as a whole

8

excludes the obstruction, if any, caused by Dycho as a proximate or legal cause of the accident.[1]

Stated differently, we find from the undisputed evidence that there is no genuine issue of a material fact as to whether Massey looked to his right, the direction from which the train struck his vehicle, before entering the crossing.  From the undisputed evidence, the trier of fact could not reasonably conclude that he did.  Thus, even if there was a dangerous obstruction negligently placed by Dycho on its property, it could not have been either a cause in fact or a proximate or legal cause of this accident. "Proof of negligence without proof of causation is nothing." Kilpatrick v. Bryant, 868 S.W.2d 594, 599 (Tenn. 1993), quoting Doe v. Linder Const. Co., Inc., 845 S.W.2d 173 (Tenn. 1992).

We recognize that there is authority that a landowner or occupier has a duty to exercise reasonable care in the use of his property so as not to injure possessors on adjoining properties. See Louisville & Nashville Railroad v. Fort, 112 Tenn. 432, 80 S.W. 429 (1904); Nashville Chattanooga & St. Louis Railway v. Wade, 127 Tenn. 154, 153 S.W. 1120 (1912). We express no opinion as to whether Dycho was negligent.  We simply note that if Dycho was negligent, such negligence was not a proximate or legal cause of the plaintiff's injury, under circumstances shown by the undisputed

_____

[1]We should note that no testimony by the plaintiff is in the record.

9

evidence before the court. The trial court was correct in granting summary judgment in favor of Dycho.

We now turn to the propriety of granting summary judgment to the railroad defendants. The plaintiff, while acknowledging substantial negligence on Massey's part, argues that Norfolk Southern and its engineer Hodge were also guilty of negligence which proximately caused his injury. Plaintiff's theory is that Hodge did not blow the train's whistle or sound the horn until immediately before impact, and had he kept a good lookout and sounded a warning earlier, Mr. Massey and the plaintiff would have been alerted to the train's presence and would have stopped before entering the crossing.

Although the railroad defendants' answer to the complaint avers that the plaintiff should be barred from recovery because of his own negligence, they do not assert or argue this on appeal, contending instead that the sole and proximate cause of the accident was Massey's negligence. The plaintiff argues that under these circumstances, if the trier of fact could reasonably find the railroad defendants guilty of any negligence, however slight, which proximately caused his injury, they should not be granted summary judgment.

10

We agree with this argument. Under our system of comparative fault, "so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover." McIntyre v. Ballentine, 833 S.W.2d 52, 57 (Tenn. 1992). Also, "in cases of multiple tortfeasors, plaintiff will be entitled to recover so long as plaintiff's fault is less than the combined fault of all tortfeasors." Id. at 58.

Norfolk Southern relies upon the case of Eaton v. McClain, 891 S.W.2d 587 (Tenn. 1994), and the analytical factors regarding comparative negligence contained therein, in support of its argument that the trial court's summary judgment was correct. In Eaton, however, the Supreme Court "clarif[ied] the circumstances under which a trial or appellate court may hold, as a matter of law, that the plaintiff's degree of fault is equal to or greater than the defendant's." Id. at 590. Here, it has not been shown that plaintiff has any degree of fault at all.

It is a well-settled rule in Tennessee that an injury may be proximately caused by several concurrent negligent acts or omissions:

> In order to be a proximate cause of an injury, a negligent act or omission must have been a substantial factor in bringing about the injury. Boling v. Tennessee State Bank, 890 S.W.2d 32, 36 (Tenn. 1994); McClenahan v. Cooley, 806 S.W.2d 767, 775 (Tenn. 1991). An injury may be proximately caused by more than one negligent act or

11

omission. <u>Kelley v. Johnson</u>, 796 S.W.2d 155, 159 (Tenn. App. 1990); <u>Stokes v. Leung</u>, 651 S.W.2d 704, 708 (Tenn. App. 1982). Thus, a negligent act or omission need not be the sole cause of an injury to be a proximate cause. <u>McClenahan v. Cooley</u>, 806 S.W.2d at 775; <u>Lancaster v. Montesi</u>, 216 Tenn. 50, 57, 390 S.W.2d 217, 221 (1965). Each person whose negligence is a proximate cause of an injury may be independently liable for the injury. <u>McClenahan v. Cooley</u>, 806 S.W.2d at 775.

<u>Burgess v. Harley</u>, 934 S.W.2d 58, 68 (Tenn. App. 1996).

Causation questions, which are fact-sensitive, are for the trier of fact to decide unless the undisputed facts, and the inferences drawn therefrom, permit only one reasonable conclusion. <u>Haynes v. Hamilton County</u>, 883 S.W.2d 606, 612 (Tenn. 1994).

T.C.A. § 65-12-108 provides the following:

**65-12-108. Precautions required for prevention of accidents.**— In order to prevent accidents upon railroads, the following precautions shall be observed:

(1) The officials having jurisdiction over every public road crossed by a railroad shall place at each crossing a sign, marked as provided by § 65-11-105. The county legislative body shall appropriate money to defray the expenses of the signs. The failure of any engine driver to blow the whistle or ring the bell at any public crossing so designated by either the railroad company or the public official shall constitute negligence with the effect and all as set forth in § 65-12-109;

(2) On approaching every crossing so distinguished, the whistle or bell of the locomotive shall be sounded at the distance of one fourth (1/4) of a mile from the crossing, and at short intervals until the train has passed the crossing;

(3) Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident;

*   *   *   *

T.C.A. § 65-12-109 provides as follows:

**65-12-109. Violation of § 65-12-108 is negligence per se.** — A violation of any of the provisions of § 65-12-108 by any railroad company constitutes negligence per se and in the trial of any causes involving § 65-12-108, the burden of proof, the issue of proximate cause, and the issue of contributory negligence shall be tried and be applied in the same manner and with the same effect as in the trial of other negligence actions under the common law in Tennessee.

Massey testified several times that he did not hear a whistle or horn until immediately before the collision. He deposed as follows:

Q.   Then you must not have known there was a train coming.

A.   No, I didn't.

Q.   You didn't hear it.

A.   No. If I'd heard a whistle I'd have stopped.

Q.   Then you went through something there; you went through the trauma of the wreck and your head was hit and so forth.

A.   Uh-huh.

13

Q.  I want to know what your answer would be to this:
    Do you believe that that train didn't blow or do
    you believe that you just didn't hear it?

A.  I believe the train didn't blow, because when they
    blow in Niota you can hear them from a good ways
    away.

Q.  Have you got good hearing?

A.  Yes, sir.

Q.  If that train would have blown coming down on that
    crossing to warn motorists, do you think you would
    have heard it?

A.  Yes, sir.


N. V. Hodge testified that as he approached the crossing, he

started blowing the crossing whistle signal and when he saw the

truck he blew a warning signal.  Mr. Hodge could not, however,

provide a rough estimate of how close he was to the truck when he

first saw it, except that it was "sudden."


Massey's testimony creates a genuine issue of material fact as

to whether Hodge blew the whistle or sounded the horn within the

distance required by T.C.A. § 65-12-108.  The transcript of the

hearing on this issue reveals that the trial court recognized that

there may be a genuine issue of a material fact or facts with

regard to the negligence of Mr. Hodge.  He stated:

> And I am concerned, I think that there may be some
> evidence here of negligence on — arguably on the part of
> the railroad.  There is probably some suggestion here,
> maybe an inference, that the engineer didn't blow his
> horn.

14

Taking Hodge's testimony in a light most favorable to the plaintiff, a reasonable jury could conclude that, since he did not see the truck until "suddenly" before impact, Hodge was not keeping a good and adequate lookout. If the jury were to find that Hodge did not keep a sufficient lookout or failed to blow the whistle or sound the horn, it could reasonably determine that such a failure to warn Massey and the plaintiff of the train's presence, was a proximate cause of the accident.

Thus, summary judgment should not have been granted to the railroad defendants. The trial court's order granting summary judgment to Mr. Hodge and Norfolk Southern is reversed. The trial court's judgment in all other respects is affirmed. This case remanded to the trial court for such other and further action that may be required consistent with this opinion. Costs on appeal are assessed equally between the appellant and appellee Norfolk Southern.

_____
Don T. McMurray, Judge


CONCUR:

_____
Herschel P. Franks, Judge


_____

15

Charles D. Susano, Jr., Judge

IN THE COURT OF APPEALS


WILLIAM T. RAWLS,                )      KNOX CIRCUIT
                                 )      C.A. NO. 03A01-9707-CV-00293
                                 )
         Plaintiff-Appellant )
                                 )
                                 )
                                 )
                                 )
                                 )
vs.                              )      HON. WHEELER A. ROSENBALM
                                 )      JUDGE
                                 )
                                 )
                                 )
                                 )
                                 )
N.V. HODGE, NORFOLK SOUTHERN )          AFFIRMED IN PART
RAILWAY COMPANY, DYCHO           )      REVERSED IN PART
COMPANY, INC., AND JAMES         )      REMANDED
MOYER MASSEY,                    )
                                 )
         Defendants-Appellants )


**JUDGMENT**


     This appeal came on to be heard upon the record from the Circuit Court of Knox County, briefs and argument of counsel. Upon consideration thereof, this Court is of the opinion that there was some reversible error in the trial court.

     The trial court's order granting summary judgment to the defendants, Mr. Hodge and Norfolk Southern, is reversed. The trial court's judgment in all other respects is affirmed. This case is remanded to the trial court for such other and further action as

may be required consistent with this opinion.  Costs on appeal are assessed equally between the appellant and appellee Norfolk Southern.


                        PER CURIAM